IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


**EUGENE C. KELTNER,**

              **Plaintiff,**

        **v.**                        CASE NO. 13-3022-SAC

**(fnu) BARTZ, Nurse, Lansing**
**Correction Facility, et al.,**

              **Defendants.**

## MEMORANDUM AND ORDER

This pro se civil complaint was filed pursuant to 42 U.S.C. § 1983 by an inmate of the El Dorado Correctional Facility, El Dorado, Kansas. Having examined the complaint, the court finds as follows.

## MOTION TO PROCEED WITHOUT PREPAYMENT OF FEES

The statutory fee for filing a civil rights action in federal court is $350.00. Plaintiff has filed a Motion to Proceed without Prepayment of Fees (Doc. 2). However, this motion is incomplete. A prisoner seeking to bring a civil action without prepayment of fees is required to submit a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). The financial information provided by Mr. Keltner is not for the

1

appropriate six-month period and is not a certified statement showing deposits and balances.  This action may not proceed until plaintiff provides the financial information required by federal law.  He will be given time to do so, and is forewarned that if he fails to comply with the provisions of § 1915 in the time allotted, this action may be dismissed without further notice.

Plaintiff is reminded that under 28 U.S.C. § 1915(b)(1), being granted leave to proceed without prepayment of fees will not relieve him of the obligation to pay the full amount of the filing fee. Instead, it entitles him to pay the fee over time through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).[1]

**FACTUAL BACKGROUND**

As the factual background for this complaint, plaintiff alleges as follows.  On March 19, 2012, at the Lansing Correctional Facility, Lansing, Kansas (LCF), he was on the segregation yard when inmate E in an adjacent cage attempted to climb the fence and was cut badly on barbed wire.  Plaintiff saw E about to fall and tried to help by catching him.  As a result, plaintiff's face and upper body were covered with E's blood.  E was climbing another fence when he was

---

[1] Pursuant to § 1915(b)(2), the Finance Office of the facility where plaintiff is currently confined will be authorized to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

2

tackled by officers, who were then also covered with E's blood. E was cuffed and taken away by paramedics. Three hours later, officers began removing the remaining inmates from the yard. Plaintiff asked why the officers were wearing orange inmate uniforms and was told they had been contaminated with E's blood. He asked to take a shower, and at first defendant Beck refused. Plaintiff then refused to cuff up and return to his cell until he got a shower. He was told to, and did, take off his clothes because they were contaminated. "A short while later" Beck returned and said plaintiff could have a shower. Plaintiff took a 2-minute cold shower without soap, because the officer with him refused to let him get soap from his cell and did not know how to turn on the hot water. "The CO" that announced breakfast said that he and Beck would tell the next shift that plaintiff needed a shower with soap and hot water, which never happened. After breakfast, plaintiff yelled for a sick call and a shower, but officers walking by his cell ignored him. "So finally (plaintiff) set his whole cell on fire," and authorities came to put out the fire. "Officer in charge" would not listen to plaintiff, and informed him that he was being "put on M.R.A." The "Black Suites (sic)" came and asked plaintiff to cuff up, but he refused. "They" shot him with "a chemical agent called Vapor that caused him to vomit blood." He was dragged out of his cell handcuffed, and all his property was taken. He was left in a bare cell for 72 hours wearing only boxers and still not provided a shower or sick call. On March

3

23, 2012, he was given a shower.  On this same date, he filed a grievance that he gave to Lee.

On March 27, 2012, plaintiff was transported to "El Dorado Super Max."  Upon his arrival he requested HIV and HepC tests, which "they refused" stating he had been tested in June.  Plaintiff filed a grievance and "finally was tested."  "Lansing" never responded to his March 23 grievance, so he filed another at the EDCF on April 9, 2012.  In response to that grievance, Mrs. Walker told him that she and Bartz had looked at computer records, which showed that he was tested for HIV and HepC on May 3, 2012, as well as in June 2011 and the results were negative.  Mrs. Walker was a Unit Team Manager, not medical staff, and plaintiff never gave her permission to look at his test results.  Bartz was a health care provider, and was not allowed to give plaintiff's test results to anyone without his authorization.

Plaintiff additionally alleges that "[b]efore the fire and this whole situation" he was "fighting (his) criminal court cases," and that since these events he was forced to sit in a cell with none of his law work and no stamps.  He claims that as a result he was unable to write certain motions and communicate with his attorneys, and that he ran out of time to file "a 2254" and now has to prove why.

**CLAIMS**

Plaintiff complains that these events have adversely affected

his trust in the prison medical staff and system and his access to the courts. Under Count I in his complaint, he claims that defendant Nurse Bartz violated "the HIPPA law" and "Patient Confidentiality privacy Rule" by giving his test results to Unit Team Member Walker. He does not formulate any other count. He seeks $250,000 in punitive damages and "for civil penalties."

**SCREENING**

Because Mr. Keltner is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). However, the court "will not supply additional factual

5

allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Twombly*, 550 U.S. at 558. To avoid dismissal, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Put another way, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007). Having applied these standards to the complaint filed herein, the court finds it is subject to being dismissed for the following reasons.

**<u>DEFENDANTS</u>**

It is a basic pleading requirement in a civil complaint, whether filed pro se or not, that each individual from whom relief is sought be named in the caption. Rule 10 of the Federal Rules of Civil Procedure provides that the title of the complaint "must" name all parties. Pro se litigants are not excused from adherence to the Federal Rules. In addition, the court-approved complaint form used by plaintiff directed that he provide information on each named defendant in the paragraphs following the caption. Furthermore, each properly-designated defendant must be referred to again in the body of the complaint where the plaintiff is required to describe each defendant's personal participation in the acts upon which the complaint is based. If these basic requirements are not met at the start of a lawsuit, service and notice problems will inevitably follow.

In this case, plaintiff has named the following people in the caption: Nurse Bartz, Unit Team Walker, CO1 Beck, and Warden McKune. In the paragraphs below the caption he provides information for Bartz and Walker only. The complaint fails to state a claim against defendant Warden McKune, who is not alleged to have personally participated in any of the acts upon which the complaint is based.

Plaintiff has not made allegations in the body of his complaint that clearly indicate his intent to seek relief against any party

7

other than those named in the caption. Thus, this court does not "liberally construe" the complaint as having been filed against persons mentioned in the complaint who were not named in the caption.[2]

**FAILURE TO STATE A FEDERAL CONSTITUTIONAL CLAIM**

Plaintiff's allegations against defendant Beck, that Beck refused at first and a short while later permitted a shower, taken as true fail to state a federal constitutional claim. Plaintiff does not state what constitutional right Beck violated or describe how he was harmed by Beck's actions. Accordingly, the court finds that plaintiff's claim against Beck is subject to being dismissed.

Plaintiff's claims against Bartz and Walker likewise fail to state a federal constitutional violation. Plaintiff alleges that he filed a grievance regarding his requests for HIV and HepC tests, to which Unit Team Manager Walker responded. By complaining about this matter in a grievance to the unit team manager, plaintiff plainly and properly invited the involvement of defendant Walker. It was therefore no constitutional violation for Walker to consult with prison medical staff while investigating his grievance regarding medical tests.

---

[2] Plaintiff may file an Amended Complaint if he intended to name any defendants other than those in the caption. He is reminded that an Amended Complaint completely supersedes the original complaint. Therefore, he may not simply refer to the original complaint, but must submit a complete Amended Complaint that contains all his claims and allegations. An Amended Complaint must be upon court-provided forms and have the number of this case, 13-3022, written at the top of the first page.

8

Nor was it a violation of patient confidentiality or plaintiff's right to privacy for defendant Bartz to provide this particular information to plaintiff's unit team manager under these circumstances. The Supreme Court has recognized a constitutional right to information privacy under the Fourteenth Amendment, *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); and the Tenth Circuit Court of Appeals "has repeatedly interpreted the Supreme Court's decision in (Whalen) as creating a right to privacy in the non-disclosure of personal information" including confidential medical information. *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000), *cert. denied*, 534 U.S. 840 (2001)(citations omitted). Nevertheless, the matter becomes more difficult when the personal information is that of a prison inmate. While "prison inmates do not shed all fundamental protections of the Constitution at the prison gates," *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974); they retain only those rights that "are not inconsistent with their status as prisoners or with the legitimate penological objections of the corrections system." *Id.* (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Assuring that prison inmates receive necessary medical attention entails cooperation between non-medical and medical prison personnel. This is not a case involving the improper "dissemination of intensely private medical information" such as HIV-positive status or transsexualism, to other inmates or random prison staff. *See e.g., Franklin v. McCaughtry*, 110 Fed.Appx. 715, 719 (7th Cir.

9

2004)(unpublished)(citation omitted)(Prisoners "at best have very limited privacy rights."); *Cortes v. Johnson*, 114 F.Supp.2d 182, 185 (W.D.N.Y. 2000)(Prisoners do not have a constitutional right to complete confidentiality of medical records).

Plaintiff's assertion that Bartz violated HIPAA (Health Insurance Portability and Accountability Act, Publ.L. 104-101, 110 Stat. 1936 (Aug. 21, 1996)) by revealing his medical tests to Walker also fails to present a plausible legal basis for his claims for money damages or other relief. HIPAA provides both civil and criminal penalties for improper disclosures of medical information. However, all courts to consider the matter have held that HIPAA does not create a private right of action. See *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006)(While no other circuit court has specifically addressed this issue . . . [e]very district court that has considered this issue is in agreement that the statute does not support a private right of action.)(citations omitted). HIPAA "specifically indicates that the Secretary of HHS (the Department of Health and Human Services) shall pursue the action against an alleged offender, not a private individual." *Logan v. Dept. of Veterans Affairs*, 357 F.Supp.2d 149, 155 (D.D.C. 2004); *University of Colorado Hosp. v. Denver Pub. Co.*, 340 F.Supp.2d 1142, 1144-45 (D.Colo. 2004). Since HIPAA does not make available a private right or cause of action, plaintiff has no entitlement to injunctive or monetary relief for alleged violations of the HIPAA. *Howard v.*

*Douglas County Jail*, 2009 WL 1504733, *4 (D.Kan. May 28, 2009); see also *Acara*, 470 F.3d at 572 ("[T]here is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction."); *Smith v. Smith*, 2007 WL 2332394, *2 (E.D. Ky. Aug. 13, 2007)(Because plaintiff had no private right of action under HIPAA, claim must be dismissed with prejudice.); *Taylor v. Morse*, 2008 WL 3822962, *6 (N.D.Cal. Aug. 13, 2008)(Because there is no such right, plaintiff's HIPAA claim is not cognizable under 42 U.S.C. § 1983.).

In his statement of background facts, plaintiff describes other alleged conditions or incidents at the EDCF including his being sprayed with a chemical agent, placed on MRA after he set fire to his cell, and confiscation of his property. However, he has not named as defendants the person or persons who actually participated in these incidents. Those persons who are named defendants, Walker, Bartz and Beck, are not alleged to have personally participated in any of these events. Plaintiff does not even assert that his constitutional rights were violated during these other events, which resulted from his serious misconduct and refusal to be cuffed. The court may not construct a legal theory on plaintiff's behalf. Plaintiff's allegations regarding the confiscation of his property including his legal material and stamps are similarly deficient.[3]

---

[3] Plaintiff's allegations are not sufficient to state a claim of denial of access to the courts as to either his "criminal cases" or the 2254 action that he does have presently pending in federal court. His allegations that his efforts in these matters were impeded by his not possessing his legal work and stamps are conclusory. For example, he does not include dates, explain why he could not

11

Plaintiff is required to show cause why this complaint should not be dismissed based upon the foregoing reasoning for failure to state a federal constitutional claim. If he fails to show good cause within the time allotted, this action may be dismissed without further notice.

The court has considered plaintiff's Motion to Appoint Counsel (Doc. 3) and finds that it should be denied. There is no right to assistance of counsel in a civil action. Moreover, it appears likely that this complaint will be dismissed for failure to state a claim.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is given thirty (30) days in which to submit a complete, certified copy of his inmate account statement for the appropriate six-month period.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to show good cause why this action should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (Doc. 3) is denied.

**IT IS SO ORDERED.**

Dated this 27th day of February, 2013, at Topeka, Kansas.

---

communicate with his counsel by other means, or allege that any non-frivolous case filed by him has actually been dismissed. In addition, he does not allege that Walker, Bartz or Beck participated in denying him access or confiscating his property.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge